IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAREN FARMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-65-PJC |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff, Karen Farmer ("Farmer"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

disability claim. 20 C.F.R. § 404.1520.[2]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

**Background**

Farmer was forty-seven years old on the alleged date of onset of disability and fifty-three on the date of the Commissioner's final decision. [R. 1, R. 131 (Ex. 1D); R. 311].[3] She has a high school education. [R. 191 (Ex. 9E)]. She has previous experience as a waitress, cashier, retail manager and order filler. [R. 178 (Ex. 7E)]. In her application, she claimed to be unable to work as a result of fibromyalgia. [R. 190 (Ex. 9E)].

**The ALJ's Decision**

In his decision, the ALJ found that Farmer last met insured status requirements on December 31, 2015, and, at Step One, that she had not engaged in any substantial gainful activity since August 10, 2010, the application date. [R. 303]. He found at Step Two that Farmer had severe impairments of fibromyalgia and obesity. *Id.* At Step Three, he found that the impairments did not meet or medically equal the severity of any listing. [R. 304]. He concluded that Farmer had the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The claimant is able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for at least six hours out of an eight-hour workday, and sit at least six hours out of an eight-hour workday, all with normal breaks. The claimant is never able to climb such things as scaffolds or ladders. She needs to avoid hazards or ladders. She needs to avoid hazards such as unprotected heights. The claimant is no more than occasionally able to climb such things as ramps or stairs, or crawl. She is only frequently able to balance, stoop, kneel and crouch.

[R. 305].

At Step Four, the ALJ determined that Farmer is capable of performing past relevant work, including cashier, DOT #211.462-010 (unskilled work at the light level of exertion [as also performed by the claimant at medium level]), and retail store manager, DOT #185.167-046,

---

[3] Farmer's application was initially denied. [R. 1-23]. She appealed, and on February 11, 2015, United States Magistrate Judge T. Lane Wilson reversed and remanded the Commissioner's decision. [R. 379-380 (Ex. 8A)].

skilled work at the light level of exertion, as performed by the claimant at the semi-skilled level. [R. 310]. He concluded, "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 04.1565 and 416.965)." *Id.*

Alternatively, the ALJ determined at Step Five that, based on Farmer's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that claimant could also perform, including press machine operator, DOT #690.685-326, unskilled work at the light level of exertion, with 149,000 jobs in the national economy; and electrical assembler, DOT #729.687-010, unskilled work at the light level of exertion, with 172,000 jobs in the national economy. [R. 312].

As a result, the ALJ found that Farmer had not been under a disability since September 15, 2010, the date the application was filed. [R. 313].

## Plaintiff's Allegations

On appeal, Farmer asserts that the ALJ: (1) erred in his credibility determination and (2) failed to properly consider the medical source opinions.

## Analysis

### 1. Credibility Determination

Farmer contends the ALJ erred in evaluating her credibility. "[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

4

The Tenth Circuit has provided a three-step process for addressing a claimant's subjective allegations of pain.

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992)).  Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  [R. 305-306].  Thus, the ALJ was required to consider plaintiff's assertions of pain and decide whether he believed them.  *See Thompson*, 987 F.2d at 1489.  "Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10nth Cir. 2013) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).  When considering the credibility of pain testimony, the ALJ should consider such factors as:

> The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).  An ALJ is not required to consider every *Hargis* factor, "but that

5

case sets out generally the kinds of factors that should ordinarily be considered." *Thompson*, 987 F.2d at 1490.

In assessing Farmer's credibility, the ALJ stated:

[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[R.305]. He supported this assessment, in part, by citing the opinion of Dr. Winkler, who testified at the hearing that Farmer is obese, has fibromyalgia and a skin disease and a low vitamin D level, but she did not meet or equal any listings. [R. 306, R. 323-327]. Dr. Winkler opined that Farmer could lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours in an eight-hour day; no limitation on sitting; occasional stairs; no ladders, ropes or scaffolds; frequent balance, bend, stoop, kneel and crouch; occasional crawl; and avoid unprotected heights. [R. 324]. She testified that she "strongly urge[s]" fibromyalgia patients to exercise because they have abnormal pain signals and "they need to sort of learn to ignore it." [R. 326]. Further, she stated that an individual who is obese but without medical illnesses should be able to exercise. [R. 327]. She also testified that fibromyalgia can be treated using a wide range of medications, including amitriptyline, trazadone, imipramine, Doxepin, muscle relaxers and Cymbalta. *Id.* The ALJ concluded that with respect to the claimant's ability to stand and/or walk and use her hands to do work like activities, the medical opinion testimony of Dr. Winkler "seems to reflect best the record." [R. 310].

Additionally, the ALJ concluded that plaintiff's allegations of pain and disability exceed what is reasonable in light of the objective signs. Specifically:

- Farmer alleged at the hearing that she has problems using her hands and drops things, but consultative examiner David Weigman, M.D., opined that she had normal functioning of her hands although her grip strength was slightly reduced.

6

[R. 307, R. 259, R. 263 (Ex. 3F)].  He reported that her grip strength was decreased bilaterally at 4/5, but arm and leg strength was normal. [R. 307, R. 259 (Ex. 3F)]. She had pain on movement and tenderness to palpation of her back and neck, but range of motion in all joints was normal and there was no joint swelling or edema of the extremities.  [R. 307, R. 259, R. 261-264 (Ex. 3F)].  Sensation was normal, deep tendon reflexes were 1/4 globally, straight-leg rising test was negative and claimant's gait was normal, symmetric, and steady.  [R. 307, R. 259].  Dr. Weigman opined that she could effectively grasp tools such as a hammer, although her grip was slightly weak.  [R. 307, R. 263].

- Although Farmer made complaints of widespread pain, rheumatologist Alan L. Martin, M.D. wrote in a letter dated December 9, 2009, that he could not identify a clear inflammatory arthropathy or myopathy to explain her complaints of diffuse pain.  [R. 308, R. 244 (Ex. 2F)].

- Farmer complained of lower extremity weakness, but Dr. Martin reported on July 23, 2010, that she had no deficit on exam.  [R. 308, R. 227 (Ex. 2F)].

- Although she testified she has difficulty using her hands, Farmer told Dr. Fesler on January 6, 2011, that she was able to use her hands to decorate cakes slowly.  [R. 308, R. 279 (Ex. 6F)].

- On May 25, 2011, Farmer told Dr. Fesler she was having shortness of breath with minimal exertion and muscle fasciculation, and her arms at times felt strange. However, her physical examination was normal except that she weighed 250 pounds and her blood pressure was 124/66.  She reported she had not been taking her Lasix.  [R. 308, R. 275-276 (Ex. 6F)].

- On August 31, 2011, Dr. Fesler's examination showed that Farmer had 2-3+ swelling of her feet and ankles and decreased reflexes in the Achilles and triceps. However, gait, mental status, coordination and motor examination were normal. [R. 308, R. 292-293 (Ex. 9F)].

- On November 17, 2011, Farmer told Dr. Fesler she was doing okay on her medications.  [R. 309, R. 290 (Ex. 9F)].

- On April 10, 2014, Farmer reported swelling of her legs, but a review of symptoms showed no muscle weakness, joint stiffness or decreased range of motion; the examination revealed muscle strength grossly normal, sensation intact and no red or hot joints. [R. 309, R. 508-509 (Ex. 11F)].

- In subsequent examinations on May 29, 2014, and April 1, 2015, Farmer voiced the same complaints and the medical examinations revealed similar findings inconsistent with her complaints.  [R. 309-310, R. 510-513 (Ex. 11F)].

Support in the medical record is among the various factors properly considered in making a credibility determination. 20 C.F.R. §§ 404.1529, 416.929. In his decision, the ALJ discussed the portions of the records he believed contradict Farmer's subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence. Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition).

The Court concludes the ALJ's credibility finding is supported by substantial evidence.

### 2. Consideration of Medical Source Evidence

Farmer complains that the ALJ improperly discounted the opinion of her treating physician, Dr. Fesler.

In formulating Farmer's RFC, the ALJ accorded "determinative weight" to Dr. Winkler's testimony because she is a medical expert in the field of rheumatology and in assessing the limitations that reasonably flow from a medical condition; she is also well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and regulations; and she had the benefit of the most complete medical record, which she reviewed in

framing her medical opinion. [R. 306, R. 514-519 (Ex. 12F)]. A physician's expertise is a permissible factor to consider in evaluating the weight to be given to the physician's opinion. 20 C.F.R. §§ 404.1527(c)(5), 415.927(c)(5) ("We generally give more weight to the opinion of a specialist about the medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.")

The ALJ accorded some weight to the opinion of examining consultant of Dr. Wiegman, who—as discussed above—noted that although Farmer's grip strength was reduced slightly, she had normal functioning of the hands. [R. 307]. Dr. Wiegman also found Farmer's complaints of muscle aches and difficulty with her activity level to be consistent with a clinical impression of fibromyalgia given tenderness on all fibromyalgia tender points. *Id.* However, the ALJ found that the record as a whole did not support the degree of limitation that the claimant described to Dr. Wiegman. *Id.*

On September 1, 2010, Dr. Fesler completed an FMLA form in which he stated that Farmer was unable to walk the distances her job required or to carry anything over ten pounds, and that her medications (Lasix and Neurontin) caused drowsiness and frequent urination. [R. 309, R. 282-285 (Ex. 7F)]. He completed a Physical Disability Parking Placard Application dated April 27, 2011, in which he opined that Farmer "could not walk without the use of or assistance from a brace, cane, crutch, another person, prosthetic device, wheelchair or other assistant device" and was "severely limited in her . . . ability to walk due to an arthritic, neurological, or orthopedic condition . . ." [R. 309, R. 202-203 (Ex. 16E)]. Dr. Fesler completed a Medical Source Opinion dated July 11, 2011, in which he opined that Farmer was limited to frequent lifting/carrying of less than ten pounds, could sit or stand and walk less than two hours in an eight-hour day; use her arms for reaching, pushing and pulling less than two hours in an eight-hour day; and use her hands for

9

grasping, handling, fingering or feeling less than two hours in an eight-hour day. [R. 309, R. 288-289 (Ex. 8F)].

The ALJ concluded that the "extreme limitations" imposed by Dr. Fesler were not fully supported by the doctor's own examinations, and he accorded the doctor's opinions "little weight." [R. 309-310]. He cited the following treating records from Dr. Fesler's files as examples:

- On August 31, 2011, although Farmer had swelling in her feet and ankles and decreased reflexes n the Achilles and triceps, her motor function coordination and gait were normal. [R. 309, R. 293 (Ex. 9F)].

- On November 17, 2011, Farmer reported she was "doing ok" on her medicines and needed refills. [R. 309, R. 290 (Ex. 9F)]. In the "Review of Systems" section, Dr. Fesler stated that excessive urination and fatigue were not present. *Id.*

- On April 10, 2014, Farmer reported swelling of her legs; however a review of systems showed no muscle weakness, joint stiffness or decreased range of motion. [R. 309, R. 508 (Ex. 11F)]. Dr. Fesler reported her muscle strength and tone were grossly normal, and there were no red or hot joints. [R. 309, R. 509 (Ex. 11F)].

- During examination on May 29, 2014, Farmer made similar complaints of edema, but the review of systems indicated no leg edema (although edema was noted under "CARDIAC"), and the doctor noted no muscle weakness, joint stiffness or decreased range of motion; muscle strength and tone were grossly normal and there were no red or hot joints. [R. 309-310, R. 510 (Ex. 11F) ]. During examination on April 1, 2015, no edema was found; there was no muscle weakness, joint stiffness or decreased range of motion; muscle strength and tone were grossly normal and there were no red or hot joints. [R. 310, R. 512 (Ex. 11F)].

The ALJ also noted that Dr. Fesler's medical source opinions were contradicted by the state agency medical consultants, Nancy Armstrong, M.D. and Luther Woodcock, M.D., who determined that Farmer could perform a range of sedentary work with lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, sit about six hours in an eight-hour workday, stand and/or walk at least two hours in an eight-hour workday; climb, balance, stoop, kneel, crouch and crawl only occasionally. [R. 310, R. 266-273 (Ex. 4F), R. 274 (Ex. 5F)].

The Court concludes that substantial evidence supports the ALJ's decision. *See* 20 CF.R. §§ 404.1527(c)(3), 416.927(c)(3); *Wall*, 561 F.3d at 1052. Accordingly, the Court rejects Farmer's argument that the ALJ improperly discounted her treating physician's opinions.

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Farmer is not disabled is hereby **AFFIRMED**.

ENTERED this 2nd day of March, 2017.

Paul J. Cleary
United States Magistrate Judge